UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARTINA PRECIADO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-14-0006-HE |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Martina Preciado brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge Joe Heaton has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). The Commissioner has answered and filed the administrative record (Doc. No. 12).[1] The parties have briefed their positions and the case is now ready for decision. For the reasons set forth below, it is recommended that the Commissioner's decision be REVERSED AND REMANDED.

---

[1] Citations to the administrative record are as "R. __," using the pagination assigned by the Social Security Administration in the certified copy of the transcript of the administrative record. Citations to other documents filed in this Court adhere to the pagination assigned by the Court's electronic filing system.

## PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on April 21, 2011, alleging a disability onset date of April 1, 2010. R. 134-140, 155-57. Following denial of her application initially and on reconsideration, Plaintiff was granted and attended a hearing before an Administrative Law Judge ("ALJ"). R. 28-45, 46-55, 59-64. The ALJ issued an unfavorable decision on September 26, 2012. R. 18-26. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-8; *see* 20 C.F.R. § 404.981. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2010, the alleged onset date. R. 20; *see* 20 C.F.R. § 404.1571. At step two, the ALJ determined that Plaintiff had the severe impairments of: "osteoarthritis; scoliosis; and unspecified thoracic or lumbosacral neuritis or radiculitis." R. 20; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 20-21; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 21-25; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found

that Plaintiff had the RFC to perform "light work," subject to additional nonexertional limitations:

> [S]he can engage in no more than occasional balancing; stooping; kneeling; crouching; crawling; or climbing of ramps, stairs, ladders, ropes, or scaffolds.

R. 21; *see* 20 C.F.R. § 404.1567(b) (defining "light work"). At step four, the ALJ also found that Plaintiff was unable to perform any past relevant work and that transferability of job skills was not an issue because Plaintiff's past relevant work was unskilled. R. 25; *see* 20 C.F.R. §§ 404.1565, .1568(a).

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. Taking into consideration the testimony of a vocational expert regarding the extent to which Plaintiff's additional limitations eroded her unskilled light occupational base, the ALJ concluded that Plaintiff could perform occupations such as cashier, rental clerk, and parking lot attendant, and that those occupations—even after an 80 percent reduction in availability due to Plaintiff's inability to speak English—offer jobs that exist in significant numbers in the national economy. R. 25-26; *see* 20 C.F.R. § 404.1545(a)(5)(ii). On that basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 1, 2010, though the date of the decision. R. 26; *see* 20 C.F.R. § 404.1520(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole

3

and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole, including [any evidence] that may undercut or detract from the ALJ's findings . . . to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff contends that substantial evidence does not support the ALJ's step-five determination that other jobs exist in significant numbers that Plaintiff can perform. Pl.'s Br., Doc. No. 15, at 4. Specifically, Plaintiff alleges that the job descriptions in the *Dictionary of Occupational Titles* ("DOT") for the three jobs identified by the VE and ALJ conflict with Plaintiff's RFC because the jobs require the ability to read but Plaintiff is illiterate. *See* Pl.'s Br. at 6.

Because literacy is a vocational factor of education rather than an aspect of the RFC, the alleged conflict is more properly described as between the DOT job entries

relied upon by the ALJ and Plaintiff's vocational factors. *See Halsell v. Astrue*, No. CIV-10-839-L, 2011 WL 3818892, at *2 (W.D. Okla. July 20, 2011) (report and recommendation) ("Vocational factors, such as education, are distinct from the RFC."), *adopted*, 2011 WL 3818809 (W.D. Okla. Aug. 26, 2011); *Tate v. Colvin*, No. 13-CV-400-TLW, 2014 WL 4684593, at *3 (N.D. Okla. Sept. 19, 2014) ("Illiteracy is actually a vocational factor rather than a functional limitation.").

A claimant's vocational factors of age, education, and work experience are considered, along with the claimant's RFC, to determine at step five whether there are a significant number of jobs that a claimant can perform. 20 C.F.R. § 404.1560(c)(1); *Halsell*, 2011 WL 3818892, at *2 ("Vocational factors, including education, are considered at step five of the sequential evaluation process."). The vocational factor of education includes whether a claimant is illiterate and whether she has the ability to communicate in English:

> (b) *How we evaluate your education*. . . . The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:
>
> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job

5

duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

. . . .

(5) Inability to communicate in English. Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

20 C.F.R. § 404.1564 ("Your education as a vocational factor."). Here, with respect to her vocational factor of education, the ALJ found that Plaintiff was "illiterate" and "unable to communicate in English." R. 25; *see* 20 C.F.R. § 404.1564(b)(1), (5).

Notwithstanding the above finding, the ALJ's initial hypothetical to the VE included the educational parameter of "a third-grade marginal education" without mention of Plaintiff's illiteracy. R. 42.[2] The ALJ subsequently asked the VE to consider the effect of "the claimant's lack of English fluency." R. 43-44. The VE testified that for all of the occupations she had identified (cashier, rental clerk, and parking lot attendant), the additional limitation would cause an 80 percent reduction in available jobs "because

---

[2] The record indicates that Plaintiff completed two or three years of education in Mexico. *See* R. 34, 160, 221 (reflecting uncertainty as to whether Plaintiff completed or merely attended third grade). Under the regulations, however, "the numerical grade level that [Plaintiff] completed in school may not represent [her] actual educational abilities" and if other evidence in the record contradicts using the completed grade level, a different level or category may be used. *See* 20 C.F.R. § 404.1564(b). Here, the record also indicates— and the ALJ specifically found—that Plaintiff was illiterate, reflecting a lesser educational level than either "third grade" or "marginal education." R. 25, 158, 176; *compare* 20 C.F.R. § 404.1564(b)(1), *with* 20 C.F.R. § 404.1564(b)(2).

those jobs have direct contact with the public, and not everyone is bilingual, and not all her customers are going to be Spanish speaking." R. 44. At step five, the ALJ relied on this testimony, finding that the available jobs—even as "reduced by 80% due to the fact that the claimant does not speak English"—existed in significant numbers in the national economy. R. 25-26.

When the disability analysis reaches step five of the sequential process, the burden shifts to the Commissioner to show that "there are sufficient jobs in the national economy for a hypothetical person with [the claimant's] impairments," *Jensen v. Barnhart,* 436 F.3d 1163, 1168 (10th Cir. 2005), "given her age, *education*, and work experience." *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007) (emphasis added) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c)(1). In making this determination, an ALJ may properly rely on a vocational expert's testimony, *Haddock v. Apfel,* 196 F.3d 1084, 1089 (10th Cir. 1999), but only when a claimant's impairments and limitations are adequately and precisely reflected in the hypothetical posed to the expert. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991) (alteration and internal quotation marks omitted); *see also Sitsler v. Astrue*, 410 F. App'x 112, 120 (10th Cir. 2011) (noting for consideration on remand "that the ALJ never asked the VE a hypothetical question that included claimant's vocational factors—his age, education, and work experience—as well as all of the limitations in his RFC" and "caution[ing] the ALJ that a proper hypothetical question relating with precision all of the claimant's

7

impairments is required in order for a VE's testimony to constitute substantial evidence to support the decision"); *Vail v. Barnhart*, 84 F. App'x 1, 5 (10th Cir. 2003) (remanding when, "contrary to the ALJ's assertion in his decision, his hypothetical questions to the VE did not contain key facts that must inform the agency's conclusion"). *See generally* 20 C.F.R. § 404.1566 (outlining factors and sources ALJ considers in determining whether work exists in the national economy and whether a claimant's work skills can be used in other work).

The Commissioner argues that because the ALJ's modified hypothetical included Plaintiff's "English fluency," the VE testimony based on that hypothetical was properly considered. *See* Def.'s Br., Doc. No. 16, at 9. However, the ALJ's hypothetical only addressed Plaintiff's lack of fluency in *speaking* English and did not take into consideration Plaintiff's inability to *read or write* English. *See* R. 43-44; *Gandarilla v. Astrue*, No. 08-cv-00375-MSK, 2009 WL 524980, at *6 (D. Colo. Mar. 2, 2009) ("Although literacy and the ability to communicate in English necessarily overlap, as per the regulations, they are indeed distinct."); 20 C.F.R. §§ 404.1564(b)(1), (5). That the hypothetical addressed speech but not reading and writing is explicit in both the VE's testimony, *see* R. 44 (VE testifying that Plaintiff's lack of English fluency would reduce the number of jobs available because "not everyone is bilingual, and not all her customers are going to be Spanish speaking"), and the ALJ's decision, *see* R. 26 ("These numbers would be reduced by 80% due to the fact that the claimant does not speak English.").

In posing a hypothetical to the VE, the ALJ should not have included a higher level of education, i.e., third grade or marginal, than what he found Plaintiff to have

acquired. *See Perry v. Astrue*, No. CIV-12-71-D, 2013 WL 951561, at *4 (W.D. Okla. Feb. 20, 2013) (report and recommendation) (concluding that ALJ's hypothetical to VE "mischaracterized [the plaintiff's] literacy" and that "the vocational testimony in response to a flawed hypothetical cannot support the step five determination"), *adopted*, 2013 WL 951550 (W.D. Okla. Mar. 11, 2013); *Walters v. Colvin*, No. CIV-12-30-SPS, 2013 WL 1286169, at *4-5 (E.D. Okla. Mar. 26, 2013) (remanding when record supported a finding of "Illiterate" but ALJ's hypothetical to VE included "Limited Education," resulting in unresolved conflict between VE testimony and the DOT). Because here the ALJ's hypothetical to the VE did not accurately represent Plaintiff's educational level (and, relatedly, her literacy skills), the VE's testimony in response to that hypothetical does not serve as substantial evidence in support of the step five determination. *See Vail*, 84 F. App'x. at 5-6 (finding that a VE's answers to hypothetical that "lacked key information," including plaintiff's vocational factor of age, did not constitute substantial evidence to support the decision of the agency); *Perry*, 2013 WL 951561, at *4; *cf. Hargis*, 945 F.2d at 1491-92 (holding that testimony based upon hypotheticals "that do not relate with precision all of a claimant's impairments" was not substantial evidence supporting the ALJ's decision that the claimant retained the ability to perform certain jobs (internal quotation marks omitted)).

The error is not insignificant. As a result of the flawed hypothetical, the VE's testimony conflicts with the DOT. The Tenth Circuit has held that an "ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial

9

evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091; *see also* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).[3] In response to the ALJ's flawed hypothetical, the VE testified that Plaintiff could perform occupations such as cashier II (DOT code 211.462-010), rental clerk (DOT code 295.357-018), and parking lot attendant (DOT code 915.473-010). R. 42-43. The first two positions, cashier II and rental clerk, require Reasoning at Level 3, Math at Level 2, and Language at Level 2. *Dictionary of Occupational Titles*, § 211.462-010 (Cashier II), 1991 WL 671840 (4th rev. ed. 1991); *id.* § 295.357-018 (Furniture-Rental Consultant (alternate title Rental Clerk)), 1991 WL 672589.[4] There is a clear conflict between being unable to read and write in

---

[3] Under Social Security Ruling 00-4p, an ALJ's duty to identify any conflicts between the VE's testimony and the DOT also extends to identifying any conflicts between the VE's testimony and the DOT's companion publication, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, which is published by the Department of Labor. *See* SSR 00-4p, 2000 WL 1898704, at *1. Although technically separate publications, they are frequently considered together. For simplicity, the undersigned refers to both publications collectively as "DOT."

[4] Under the DOT, these levels are as follows:

Reasoning: Level 3 - Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

Math: Level 2 - Add, subtract, multiply, and divide all units of measure. Perform the four operations with like common and decimal fractions. Compute ratio, rate, and percent. Draw and interpret bar graphs. Perform arithmetic operations involving all American monetary units.

Language: Level 2 - READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.

English, *see* 20 C.F.R. § 404.1564(b)(1), and being able to perform a job that requires significant reading and writing, as these jobs do. *See Beloborodyy v. Colvin*, No. 11-cv-00797-PAB, 2013 WL 5366860, at *5 (D. Colo. Sept. 25, 2013) (reversing where substantial evidence did not support ALJ's decision that plaintiff with limited ability to communicate in English could perform jobs identified by VE with language levels of 1 and 2 when ALJ did not provide reasonable explanation for the conflict); *Nail v. Colvin*, No. CIV-12-65-SPS, 2013 WL 955023, at *3-4 (E.D. Okla. Mar. 12, 2013) (remanding for unresolved conflicts between VE testimony and the DOT when, among other conflicts, ALJ did not reconcile plaintiff's illiteracy with jobs requiring reading levels of at least 2). The ALJ did not fulfill his duty to "investigate" and "elicit a reasonable explanation for" this conflict. *See Haddock*, 196 F.3d at 1091; SSR 00-04, 2000 WL 1898704, at *4.[5]

---

> WRITING: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
>
> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

DOT § 211.462-010, 1991 WL 671840; *id*. § 295.357-018, 1991 WL 672589.

[5] Plaintiff identifies other potential conflicts between her vocational factors and the DOT entries for the cited occupations, including whether she can perform the level of math required for the cashier II and rental clerk positions and whether she can perform the levels of reading and math, and drive an automobile, as required for the parking lot attendant position. *See* Pl.'s Br. at 9-13. In light of the recommendation made herein, the undersigned need not reach these additional claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

For both of these reasons (the flawed hypothetical and the unresolved conflicts with the DOT), the ALJ could not rely on the VE's testimony as evidence that Plaintiff is able to perform jobs that exist in significant numbers in the national economy. Lacking sufficient other evidence, the ALJ's step-five determination is unsupported by substantial evidence. The decision of the Commissioner should be reversed and remanded for further proceedings.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 27, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 13th day of March, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE